32594.   WINSTON v. THE STATE.

712

Decided July 16, 1949.

*Wyatt & Morgan,* for plaintiff in error.

*E. W. Fleming, Solicitor,* contra.

Townsend, J. (After stating the foregoing facts.) ■ Counsel for the defendant contend, in ground 1 of their amended motion for a new trial, that the trial court erred in making an interpolation regarding the testimony of the State's witness, that "He testified it was one and a half gallons," on the ground that this amounted to an expression of what the evidence in the case showed.

A correct statement by the court as to the testimony of a witness is not error in the absence of special circumstances tending to show such an unwarranted emphasis upon certain testimony as might confuse or prejudice the jurors. This statement does not fall within this category. Furthermore, it was not objected to at the time and, for this reason, it cannot be considered on review. See *DeVere* v. *State,* 45 *Ga. App.* 330 (4) (164 S. E. 485).

■ Ground 2 of the amended motion for a new trial contends that the court erred in overruling the defendant's motion to exclude evidence shown to have been obtained through an illegal search of his premises. The admission of evidence thus obtained is a violation of the search and seizure clause of the Federal and State Constitutions as contained in the Fourth Amendment to the Federal Constitution and article 1, section 1, paragraph 16 of the Constitution of the State of Georgia; and it also violates article 1, section 1, paragraph 6 of the State Constitution, providing that no person shall be required to give testimony tending in any manner to criminate himself. Special ground 3 complains of the failure of the trial court to give a charge on the inadmissibility of such evidence; and ground 4: complains of a charge that "Federal decisions do not apply in State cases." These grounds will be considered together.

Beginning with *Williams* v. *State,* 100 *Ga.* 511 (supra), the Supreme Court of this State has consistently held that, although evidence may have been obtained by reason of most flagrant violations of the provisions of the Bills of Rights of the Federal and State Constitutions guaranteeing to the people of this nation and State the right to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, evidence thus obtained is nevertheless admissible. See *Williams* v. *State,* supra; *Groce* v. *State,* 148 *Ga.* 520 (97 S. E. 525); *Lester* v. *State,* 155 *Ga.* 882 (118 S. E. 674); *Springer* v. *State,* 121 *Ga.* 155 (48 S. E. 907); *McIntyre* v. *State,* 190 *Ga.* 872 (supra).

The evidence thus obtained by the arresting officers in the instant case was, therefore, admissible under the law of this State. Since the evidence is admissible, the trial court also properly omitted from his charge a statement expressing a con-

trary view, as complained of in ground 3 of the amended motion.

In Wolf *v.* Colorado, decided by the United States Supreme Court June 27, 1949, it was held that the admission of evidence procured, in violation of the Fourth Amendment of the Federal Constitution, by the making of an unlawful search on the part of State officers, does not amount to a violation of the due-process-of-law clause contained in the Fourteenth Amendment of the Federal Constitution in States where the evidence thus unlawfully obtained is admissible. Also, in *McIntyre* v. *State,* supra, headnote 2, it is held as follows: "The Fourth and Fifth Amendments to the Constitution of the United States containing similar provisions have no application to the use of such evidence obtained by State officers in State court trials." It follows that Federal decisions involving this question have no application in State courts, and it was therefore not error for the trial court so to charge.

Nor does the evidence thus unlawfully obtained violate article 1, section 1, paragraph 6 of the Constitution of the State of Georgia, providing that no person shall be compelled to give testimony tending to criminate himself, since the defendant was not forced to furnish the evidence, but it was, on the contrary, forcibly taken from his premises. As pointed out in *Calhoun* v. State, 144 *Ga.* 682 (supra), "The criterion is, who furnished or produced the evidentiary fact connecting the defendant with the crime?" Where, as here, the officer forcibly takes the evidence, it is not furnished by the defendant so as to come within the constitutional inhibition against requiring one to give testimony tending to criminate himself.

In view of these authorities, special grounds 2, 3, and 4 of the amended motion for new trial are without merit.

Speaking for the writer only, the decisions of our Supreme Court making admissible evidence obtained through the criminal acts of peace officers, amounting to an unlawful, unwarranted, unreasonable, and reprehensible violation of our two most sacred documents aside from Holy Writ, present a most deplorable paradox. These decisions have had the effect of making but an empty shell of what was intended by the framers of these great guaranties of liberty to be the living seed of freedom. The Bills

of Rights were ordained and established to protect the citizen against his public officers. A part of the first provision of the Constitution of the State of Georgia (article 1, section 1, paragraph 1) provides as follows: "Public officers are the trustees and servants of the people, and at all times amenable to them."

The foregoing decisions of our Supreme Court, coupled with the law not in conflict therewith, say in effect to the peace officers of this State, "You shall not make an unreasonable search and seizure of the home of a citizen, because his home is his castle. The breaking down of his door is a trespass for which you are responsible both civilly and criminally. An unlawful search and seizure by you amounts to a violation of the most sacred rights given under our organic law. However, if you do make such a search, bring the evidence you thus obtained into a court of justice, and it will be given the same consideration as evidence honorably obtained."

This does not make of our peace officers the servants and trustees contemplated in the first provision of our Constitution, nor does it confine our courts to this category. It affords a poor protection to the citizen from the outlawry of his public servants.

The writer agrees to the affirmance of the instant case solely because he is bound by precedent. This court is without power to overrule the decisions of the Supreme Court. The rule as enunciated in this State, making evidence obtained in violation of the search-and-seizure clause of the Federal and State Constitutions admissible, creates an injustice for which the citizen has no adequate remedy. As pointed out in the very able dissenting opinion of Mr. Justice Murphy in Wolf v. Colorado, supra, the remedies of civil and criminal prosecution against the offender are wholly inadequate. The citizen's only adequate remedy is the use of force in the protection of the sanctity of his threshold. This leads to trouble, expense, court action, and other extremes which the average citizen of this State hesitates to invite, even for the protection of his most sacred civil rights.

The writer here is in hearty accord with the dissenting views of Mr. Justice Rutledge, Mr. Justice Murphy, and Mr. Justice Douglas. As Mr. Justice Murphy further stated, "Today's decision will do inestimable harm to the cause of fair police methods in our cities and States. Even more important, perhaps, it must.

have tragic effect upon public respect for our judiciary. For the court now allows what is indeed shabby business: lawlessness by officers of the law."

The writer concedes that the Supreme Court of this State is supported by a majority of the courts of this Union in its position. Of the 47 States which have passed on the question, 30 reject the doctrine applied in Weeks v. United States, 232 U. S. 383 (34 Sup. Ct. 341, 58 L. ed. 652), to the effect that evidence obtained in violation of the Fourth Amendment of the Federal Constitution is not admissible, while only 17 States adhere to the Weeks doctrine. However, as pointed out by Mr. Justice Murphy in Wolf v. Colorado, supra, we probably should not decide due-process questions by simply taking a poll of the rules in the various jurisdictions. Also, the writer thinks well of the statement contained in Mr. Justice Rutledge's dissenting opinion in the same case, as follows: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late."

This question has not been presented to our Supreme Court as it is presently constituted. However, the fact remains that, unless it sees fit to restore to the sovereign people our Bill of Rights by overruling this line of decisions, the trial courts and this court have no alternative but to give continued approval to its violation.

*Judgment affirmed. MacIntyre, P. J., and Gardner, J., concur specially.*

MacIntyre, P. J., concurring specially. I concur in the judgment of affirmance but do not concur in all that is said in division 2 of the opinion. With reference to that division, I wish merely to say that this court certified this question to the Supreme Court of Georgia and it was answered as follows: "Articles taken from the person or premises of the accused, tending to establish his guilt of the offense of which he is charged, are admissible in evidence against him, notwithstanding the articles were discovered by an unlawful search and seizure; and this rule of evidence is not violative of the constitutional prohibition of unreasonable searches and seizures." *Calhoun v. State,* 144 *Ga.* 679 (87 S. E. 893). This ruling has since been consistently followed by the Supreme Court of Georgia and this court, and I think that the question of the admissibility of evidence thus obtained is no longer open for discussion by this court. *Hyde* v.

*State*, 196 *Ga*. 475 (26 S. E. 2d, 744). I am authorized to say that Gardner, J., joins in this special concurrence.